# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| POLARIS INDUSTRIES INC., | Civil No. 15-4475 (JRT/FLN) |
| Plaintiff/Counter Defendant, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM** |
| ARCTIC CAT INC. and ARCTIC CAT SALES INC., | |
| Defendants/Counter Claimants. | |

Dennis C. Bremer and William F. Bullard, **CARLSON CASPERS VANDENBURGH LINDQUIST & SCHUMAN P.A.**, 225 South Sixth Street, Suite 4200, Minneapolis, MN  55402, for plaintiff/counter defendant.

John C. Adkisson, Joseph A. Herriges, and Conrad A. Gosen, **FISH & RICHARDSON P.C.**, 60 South Sixth Street, Suite 3200, Minneapolis, MN  55402, for defendants/counter claimants.

Plaintiff/Counter Defendant Polaris Industries, Inc. ("Polaris") brought this action as part of a series of patent infringement cases between 2013 to 2015 against Defendants/Counter Claimants Arctic Cat Inc. and Arctic Cat Sales Inc. (collectively, "Arctic Cat") relating to 4x4 Trail Recreational Off-Road Vehicles ("4x4 Trail ROV"). Arctic Cat counterclaimed that Polaris monopolized or attempted to monopolize the 4x4 Trail ROV market by engaging in sham litigation in violation of Section 2 of the Sherman Act.  Polaris moved to dismiss Arctic Cat's counterclaim.  Because there has not been a sufficient number of infringement cases to necessitate a serial sham litigation inquiry and because Polaris's challenged patent infringement action is not objectively baseless, the Court will grant Polaris's motion to dismiss Arctic Cat's counterclaim.

## BACKGROUND

### I. POLARIS AND ARTCIC CAT ARE MARKET COMPETITORS

Arctic Cat and Polaris manufacture off-road vehicles. From 2007 to 2013, Polaris controlled the 4x4 Trail ROV market in the United States with over 90% market share. (Defs.' Am. Ans. & Countercl. ("Countercl.") ¶ 59, Feb. 18, 2016, Docket No. 15.) In 2007, Polaris announced a new 4x4 Trail ROV – the Polaris Ranger RZR. (*Id.* ¶ 58.) In 2013, Arctic Cat introduced a competing product – the Wildcat Trail. (*Id.* ¶ 60.) Arctic Cat's entry in the 4x4 Trail ROV market allegedly reduced Polaris's market share by 10%. (*Id.* ¶ 62.)

### II. POLARIS'S PATENT INFRINGEMENT CASES AGAINST ARCTIC CAT

#### A. Five Patent Cases

Between 2013 and 2015, Polaris brought five separate patent infringement cases against Arctic Cat.[1] The technologies in these cases concern ROVs and generally relate to the Polaris Ranger RZR. These disputes first began on December 3, 2013, when Polaris sent Arctic Cat a letter alleging a series of Arctic Cat Wildcat vehicles infringed or "[would] infringe" on three of Polaris's patents (U.S. Patent Nos. 8,596,405 (" '405"), 7,819,220 (" '220"), and 8,383,125 (" '125")). (Countercl. ¶ 14.) Arctic Cat promptly filed a declaratory judgment action for non-infringement of the three patents. (Case 1 Compl. ¶ 6, Dec. 19, 2013, Docket No. 1.) Polaris later conceded it had no basis for

---

[1] Throughout the opinion, citations referencing "Case 1" denote the docket for Case No. 13-3579. Citations referencing "Case 2" denote the docket for Case No. 14-3386. Citations referencing "Case 3" denote the docket for Case No. 14-3412. Citations referencing "Case 4" denote the docket Case No. 15-4129. All other record citations refer to the docket in this case.

asserting infringement on its '220 and '125 patents, and provided Arctic Cat with a covenant not to sue on those two patents.  (Countercl. ¶ 16.)

Over the course of several months, Polaris successively filed three patent infringement actions alleging certain Arctic Cat vehicles infringed on Polaris's patents: Case 1 regarding the '405 patent; Case 2 regarding U.S. Patent No. 8,746,719 (" '719"); and Case 3 regarding U.S. Patent No. 8,827,028  (" '028").  (Case 1 Defs.' Answer & Countercl. ¶¶ 18-29, Nov. 10, 2014, Docket No. 48; Case 2 Compl. ¶¶ 8-12, Sept. 5, 2014, Docket No. 1; Case 3 Compl. ¶¶ 8-12, Sept. 9, 2014, Docket No. 1.)  This Court granted Arctic Cat's motion to consolidate Cases 1, 2, and 3, despite Polaris's opposition. (Case 1 Mem. Op. & Order on R&R of Magistrate Judge, May 12, 2015, Docket No. 100.)

Thereafter, while the consolidated cases were pending, Arctic Cat filed petitions for *Inter Partes* Review ("IPR") with the Patent Trial and Appeal Board (the "PTAB") attacking the validity of Polaris's '405, '028, and '719 patents.  (Countercl. ¶ 21.) Because the IPR could impact the civil actions, Polaris and Arctic Cat jointly requested a stay.  (Case 1 Parties' Stipulation for Stay of Cases, Aug. 28, 2015, Docket No. 125.) The parties explained the stay would "conserve party resources," "facilitate resolution of the matter," and "simplify and streamline" the parties' dispute.  (Case 1 Joint Appeal from Order Den. Stipulated Mot. to Stay Litigation at 1, 6, Sept. 14, 2015, Docket No. 140.)  The Court granted the stay "with the clear expectation that the parties" would not use the IPR process to "prolong or obfuscate this litigation."  (Case 1 Mem. Op. & Order Reversing Order of the Magistrate Judge at 6, Nov. 5, 2015, Docket No. 151.)  At the

same time, Polaris accelerated the process to obtain additional patents to assert against Arctic Cat.  (Countercl. ¶ 24.)

On November 16, 2015, eleven days after this Court stayed the consolidated case, Polaris filed Case 4, alleging certain Arctic Cat vehicles infringed its U.S. Patent No. 8,944,449 (" '449").  (Case 4 Compl. ¶¶ 8-12, Nov. 16, 2015, Docket No. 1.)  Case 4 specifically regarded Arctic Cat's alleged use of a "sway bar having a middle portion positioned rearward of a rear end of the frame" in their 4x4 Trail ROVs.  (*Id.* ¶ 10.)

Finally, on December 22, 2015, Polaris filed the instant action, Case 5, against Arctic Cat alleging Arctic Cat's Wildcat vehicles infringed U.S. Patent No. 9,217,501 (" '501"), a patent Polaris obtained through an accelerated process.  (Compl. ¶¶ 8-25, Dec. 22, 2015, Docket No. 1; Countercl. ¶ 37.)

### B.     Results from *Inter Partes* Review

On February 4, 2015, the PTAB issued a written decision confirming the claims under review on the '405 patent, the patent originally asserted in Case 1, were invalid as obvious.  (Countercl. ¶ 39.)  The PTAB stated it was "unaware of any case law that supports [Polaris's] position," that Polaris's arguments were unpersuasive, "d[id] not comport with common sense," aspects were "devoid of any analysis," and that Polaris's position "would effectively eviscerate obviousness law."  (*Id*.)  Furthermore, on January 30, 2017, the PTAB issued a written decision confirming claims under review regarding the '028 patent and '719 patent were also invalid.  (Pl.'s Ltr. to Court, Exs. A at 62-63, B at 47, C at 74, D at 65, Feb. 2, 2017, Docket No. 104.)

### C. Arctic Cat's Claims of Sham Litigation in Cases 1 and 3 – Dismissed with Prejudice

In Case 1, Arctic Cat asserted that Polaris's allegations of patent infringement were sham litigation in that those allegations were objectively baseless and were made with the intent to monopolize or maintain a monopoly in the 4x4 Trail ROV market. (Case 1 Am. Compl. ¶¶ 150-55, Apr. 29, 2014, Docket No. 10.) Arctic Cat also asserted as separate counts in its complaint that Polaris's patents were unenforceable due to its inventor's inequitable conduct during patent prosecution. (*Id.* ¶¶ 144-49.)

The Court granted Polaris's motion to dismiss Arctic Cat's sham litigation and inequitable conduct claims with prejudice. (Case 1 Mem. Op. & Order at 52-55, Oct. 20, 2014, Docket No. 60.) The Court noted: "The sham exception applies where (1) 'the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits,' and (2) 'the baseless lawsuit conceals an attempt to interfere **directly** with the business relationships of a competitor through the use of the government **process** – as opposed to the **outcome** of that process – as an anticompetitive weapon.'" (*Id.* at 53 (alteration in original) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.* (*PREI*), 508 U.S. 49, 60-61 (1993)).) The Court found that Arctic Cat's "allegations are merely a recitation of the elements of a sham litigation claim and do not allege any facts showing that Polaris' lawsuit is objectively baseless." (*Id.*) The Court also found that Arctic Cat failed to adequately allege, with the specificity necessary, claims for inequitable conduct. (*Id.* at 49.)

In Case 3, Arctic Cat again pled sham litigation and inequitable conduct as separate counts in its counterclaim. (Case 3 Ans. & Countercl. ¶¶ 94-95, 98-120, Oct. 1,

2014, Docket No. 8.)  In granting Polaris's motion to dismiss Arctic Cat's sham litigation claim with prejudice, the Court found that Arctic Cat again failed to meet the two requirements of *PREI*.  (Case 3 Mem. Op. and Order Granting Defs.' Mot. to Dismiss at 15-17, Aug. 4, 2015, Docket No. 46.)  The Court also found that Arctic Cat failed to adequately allege claims for inequitable conduct with specificity.  (*Id.* at 8-14.)

In the present action, Case 5, Artic Cat asserted two theories of sham litigation: (1) Polaris engaged in anticompetitive conduct by filing a series of patent infringement actions against Arctic Cat without regard to their merits ; and (2) Polaris engaged in anticompetitive conduct by filing a single objectively baseless infringement action of its '449 patent in Case 4.

### III. PROCEDURAL BACKGROUND

Polaris filed the instant action, Case 5, on December 22, 2015.  On January 28, 2016, Arctic Cat answered the complaint and denied currently infringing or ever infringing on the '501 patent.  Arctic Cat subsequently filed a counterclaim seeking judgment that Polaris monopolized or attempted to monopolize the 4x4 Trail ROV market in violation of Section 2 of the Sherman Act by engaging in sham litigation. On March 18, 2106, Polaris moved to dismiss Arctic Cat's counterclaim.

### DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), courts consider all facts alleged in the complaint as true to determine if the complaint "'state[s]

a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although courts accept the complaint's factual allegations as true, courts are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rule 12(b)(6) also authorizes dismissal of a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).[2]

## II.   RES JUDICATA – SHAM LITIGATION IN CASES 1 AND 3

The parties dispute whether res judicata bars Arctic Cat from relitigating Case 1 and Case 3 as shams to support its argument that Polaris engaged in serial sham litigation. "Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). The only

---

[2] Polaris argues there is a split in authority as to whether the Fed. R. Civ. P. 9(b) heighted pleading standard applies to sham litigation claims, but cites only *Breville Pty Ltd. v. Storebound LLC*, No. 12-1783, 2013 WL 1758742, at *7 (N.D. Cal. Apr. 24, 2013) to support this position. However, that case merely applied Rule 9 heightened standard to the plaintiff's inequitable conduct counterclaim because such a claim "sounds in fraud." *Id.* at *3. Nothing in that case suggests that the Rule 9 standard applied to the plaintiff's sham litigation counterclaim. *Id.* at *7-8. As the Court finds Arctic Cat's instant action – alleging serial sham litigation and objectively baseless patent infringement – does not sound in fraud, it declines to apply the Rule 9 heightened pleading standard.

issue contested by the parties is whether Case 1, Case 3, and this case involve "the same cause of action."

The exact boundaries of a cause of action "cannot be stated with mathematical precision." *Poe v. John Deere Co.*, 695 F.2d 1103, 1106 (8th Cir. 1982). Nevertheless, "two causes of action are the same for res judicata purposes" if the second claim "arises out of the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 742. In determining whether two actions arise out of the same nucleus of operative facts, the Court must analyze whether the facts underlying each action concern the same "transaction, or series of connected transactions." *Poe*, 695 F.2d at 1106 (quoting Restatement (Second) of Judgments § 24(1) (1982)). What comprises a transaction, or series of connected transactions, is "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting Restatement (Second) of Judgment § 24(2) (1982)).

Arctic Cat argues res judicata does not preclude its sham litigation claim because the doctrine only applies when a party sets forth the same allegations based on the same operative facts. Arctic Cat asserts Case 1 and Case 3 related to Polaris's inequitable conduct before the Patent Office, not on the objectively baselessness infringement allegations described herein, nor on the serial filing of cases without regard to their merit.

The Court finds Arctic Cat's argument unpersuasive. In Cases 1 and 3, Arctic Cat pled sham litigation and inequitable conduct as **separate** counts in its pleadings. (Case 1

Am. Compl. at 37-38; Case 3 Ans. & Countercl. at 34-37.) In Case 1, the Court dismissed with prejudice Arctic Cat's sham litigation claim because the Court found Arctic Cat's allegations were "merely a recitation of the [*PREI*] elements . . . and [did] not allege any facts showing that Polaris' lawsuit [was] objectively baseless." (Case 1 Mem. Op. and Order at 53.) Similarly, in Case 3, the Court also dismissed Arctic Cat's sham litigation claim because its pleadings were "identical" to Case 1. (Case 3 Mem. Op. and Order at 17.)

Arctic Cat's sham litigation allegations in Case 1, Case 3, and the present case all assert the same claim – sham litigation – against Polaris under the *PREI* standard. The present action only differs in that Arctic Cat proffers new legal standards in support of its serial sham litigation argument. Despite Artic Cat's assertion, even if two actions have different factual scenarios leading to liability and allege different anticompetitive conduct, "res judicata contemplates that there may be some variance in the proof required for claims that are nonetheless **the same claim**." *Crystal Imp. Corp. v. AVID Identification Sys., Inc.*, 582 F. Supp. 2d 1166, 1171 (D. Minn. 2008) (emphasis added) (quoting *Lane*, 899 F.2d at 743). Arctic Cat's sham litigation claims in Case 1, Case 3, and the present case are all related in origin, motivation, and share the same factual predicate, in that they all require the establishment of Polaris's wrongful intent to monopolize and exclude Arctic Cat from the 4x4 Trail ROV market. *See id.* Likewise, Arctic Cat's sham litigation claims consistently seek to address the same wrong – Polaris's allegedly anticompetitive behavior intended to maintain monopoly power. *Id.*

Thus, res judicata bars Arctic Cat from relitigating its sham litigation claims from Case 1 and Case 3.

The Court, therefore, must decide pursuant to Arctic Cat's arguments whether (1) Polaris engaged in anticompetitive conduct by filing a series – not including Case 1 and Case 3 – of patent infringement actions against Arctic Cat without regard to their merits; and (2) Polaris engaged in anticompetitive conduct by filing a single objectively baseless infringement action of its '449 patent in Case 4.

### III.  SHAM LITIGATION

As a general rule, "the act of filing a lawsuit is immune from antitrust or tort liability unless it is found to be a mere sham intended to disguise tortious or anti-competitive liability." *Datascope Corp. v. Vascular Sols., Inc.*, 165 F. Supp. 2d 933, 936 (D. Minn. 2001) (citing *United Mine Workers v. Pennington*, 381 U.S. 657 (1965) and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)). Known as the *Noerr-Pennington* doctrine, the doctrine extends immunity unless the litigation constitutes "mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." *Noerr Motor Freight, Inc.*, 365 U.S. at 144.

#### A.  Exceptions to the *Noerr-Pennington* Doctrine

Two Supreme Court cases describe the sham litigation exception to the immunity provided by the *Noerr-Pennington* doctrine – *California Motor Transport Co. v. Trucking Unlimited* (*California Motor*), 404 U.S. 508, 509-16 (1972) and *PREI*, 508 U.S. at 60-65. In *California Motor*, the Supreme Court held allegations that petitioners

instituted the proceedings and actions with or without probable cause and regardless of the merits of the cases were "[o]n their face . . . within the 'sham' exception in the *Noerr* case". 404 U.S. at 515-16. The Supreme Court indicated that a practice of reprehensible or illegal behavior may result in an antitrust violation, although it "may be a difficult line to discern and draw." *Id.* at 513.

About twenty years after *California Motor*, the Supreme Court in *PREI* concluded the sham exception applies when (1) the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) "the baseless lawsuit conceals 'an attempt to interfere **directly** with the business relationships of a competitor." *PREI*, 508 U.S. at 60-61 (quoting *Noerr Motor Freight, Inc.*, 365 U.S. at 144). The Eighth Circuit explained the *PREI* decision provides an exception to the *Noerr-Pennington* doctrine exists:

> only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the *Noerr-Pennington* cloak of immunity provides no protection.

*Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985) (quoting *Chest Hill Co. v. Guttman*, No. 1-79-240, 1981 WL 2160, at *11 (S.D. Ohio May 29, 1981)).

However, "[t]he Eighth Circuit has not yet evaluated the potential interplay between *PREI* and *California Motor*." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 164 F. Supp. 3d 1117, 1133 (D. Minn. 2016). "Indeed, '[i]t is unclear whether *PREI* distinguished or displaced the sham litigation test first propounded in *California*

*Motor.*'"  *Id.* (quoting *Waugh Chapel S., LLC v. United Food & Comm. Workers Union Local 27*, 728 F.3d 354, 363 (4th Cir. 2013)).

The Ninth Circuit, however, reconciled the two cases, concluding each applies to a different situation. *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council* (*POSCO*), 31 F.3d 800, 810 (9th Cir. 1994).[3] The Court held that where "[*PREI*] provides a strict two-step analysis to assess whether a single action constitutes sham petitioning . . . . *California Motor* . . . deals with the case where the defendant is accused of bringing a whole series of legal proceedings." *Id.* at 810-11. The Court determined *California Motor* should be applied "[w]hen dealing with a series of lawsuits." *Id.* at 811. In this circumstance, the question is whether the successive filings were "brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Id.*

Ultimately in *POSCO*, the Court held plaintiff could not substantiate its "sham" litigation claim under *California Motor* because more than half of defendant's twenty-nine cases and arbitration actions, that the plaintiff alleged as part of a pattern of filings "without regard to the merits," had proven successful. *Id.* The Court, thus, must determine whether application of the *POSCO* standard is appropriate in this action pursuant to Arctic Cat's argument that Polaris engaged in serial sham litigation without regard to the merits.

---

[3] The Ninth Circuit reasoned that it was "not persuaded that [*PREI*] effectively overrule[d] *California Motor* . . . .  Far from criticizing or limiting *California Motor* . . . the [*PREI*] majority cited it with approval." *POSCO*, 31 F.3d at 810. In fact, the Supreme Court acknowledged that *PREI* dealt with a different question than *California Motor*, noting that "[n]othing in *California Motor Transport* retreated from the[] principle . . . . [that] unprotected activity [must] lack objective reasonableness . . . . regardless of intent or purpose." *PREI*, 508 U.S. at 57-58.

## B.     The *California Motor* and *POSCO* Standard

Whereas Arctic Cat asks the Court to apply the *POSCO* standard, Polaris counters there are not a series of actions to justify applying that standard. The parties, nevertheless, agree Federal Circuit law governs the pleading standard for sham litigation.[4]

The Federal Circuit in *ERBE Elektromedizin GmbH v. Canady Technology LLC* (*ERBE*), declined to determine whether to adopt the *POSCO* standard, because it held that three relevant actions were not enough to implicate a "series" or pattern of legal proceedings. 629 F.3d 1278, 1291 (Fed. Cir. 2010). The Court observed that "two circuit courts . . . applied a different standard where there [was] a 'whole series of legal proceedings.'" *Id.* ( quoting *Primetime 24 Joint Venture v. Nat'l Broad. Co., Inc.*, 219 F.3d 92, 101 (2d Cir. 2000); *POSCO*, 31 F.3d at 811). But the Court ultimately decided it did not need to address whether to adopt the test because the case did not present a "'series' of legal proceedings." *Id.* The Court reasoned that "two" or "three" cases were not sufficiently "'simultaneous and voluminous'" to "implicate a test for 'a whole series of legal proceedings.'" *Id.* at 1291-92. Applying the *PREI* test, the Court affirmed the district court's dismissal of the sham litigation claim, finding ERBE had probable cause to bring the patent enforcement litigation. *Id.* at 1292.

Arctic Cat asserts that Polaris's campaign of seven patents across five cases qualifies for *POSCO* liability, and argues that in *Hanover 3201 Realty, LLC v. Village*

---

[4] *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067-68 (Fed. Cir. 1998) ("[A]n antitrust claim premised on stripping a patentee of its immunity from the antitrust laws is typically raised as a counterclaim by a defendant in a patent infringement suit. . . . we conclude that we should decide these issues as a matter of Federal Circuit law").

*Supermarkets, Inc.*, the Third Circuit found that a series of four actions was sufficient to state a claim under *POSCO*. See 806 F.3d 162, 181 (3d Cir. 2015). In *Hanover 3201 Realty*, the Third Circuit stated although four sham petitions will not always qualify for the *POSCO* standard, it was enough in the instant action where a party brought challenges in four different government areas to obstruct another party from obtaining necessary government approvals for a real estate project. *Id.*

However, as this Court determined that res judicata bars Arctic Cat from re-litigating Case 1 and Case 3 as shams, only three actions remain – Case 2, Case 4, and Case 5. The Federal Circuit clearly held three cases is not enough to constitute a series of legal proceedings to establish a practice of reprehensible or illegal anticompetitive behavior under *California Motor* and *POSCO*. This is consistent with the law from other jurisdictions, which refused to apply *California Motor* to a small number of cases. *See, e.g.. Amarel v. Connell*, 102 F.3d 1494, 1519-20 (two cases); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309-10 n.10 (E.D. Pa. 2011) (five cases); *Marchon Eyewear, Inc. v. Tura LP*, No. 98-1932, 2002 WL 31253199, at *8 (E.D.N.Y Sept. 30, 2002) (two cases). Furthermore, as the instant action involves only three cases, Arctic Cat's reliance on *Hanover 3201 Realty* is misguided, as it involved four cases, and the court indicated that even four sham petitions is not necessarily sufficient to state a claim under *POSCO*.

Thus, the Court finds that the three relevant cases that Polaris filed against Arctic Cat do not involve a "whole series of legal proceedings" necessitating application of the *California Motor* and *POSCO* standard. The Court will address Arctic Cat's remaining argument in support of its sham litigation claim.

### C. The *PREI* Standard

Arctic Cat next asks this Court to apply the *PREI* standard to find that Polaris engaged in anticompetitive conduct by filing a single objectively baseless infringement action of its '449 patent in Case 4. As stated previously, the Supreme Court in *PREI* found that the sham exception applies when (1) the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) "the baseless lawsuit conceals 'an attempt to interfere **directly** with the business relationships of a competitor." *PREI*, 508 U.S. at 60-61 (quoting *Noerr Motor Freight, Inc.*, 365 U.S. at 144).

The '449 patent requires a "sway bar" wherein "the middle portion is positioned rearward of a rear end of the frame." (Def.'s Am. Mem. in Supp. of Mot. to Dismiss, Ex. D at Claim 1.) Arctic Cat namely alleges that Polaris's '449 patent infringement action in Case 4 is objectively baseless because, unlike Figures 7 and 9 of the '449 patent, no portion of the sway bar in Arctic Cat's vehicles is rearward of either the rear vertical frame member or of the hitch receiver.

Polaris counters Arctic Cat's claim construction is misguided as the patent never mentions either the hitch receiver or the portion of the frame above the sway bar in its specification. Polaris also argues that Arctic Cat avoids the most obvious interpretation of the clause at issue – that the middle of the sway bar must be rearward of the rear end of the frame where the middle portion is "positioned" on the frame – and that Arctic Cat's sway bar is plainly rearward of the rear end of the frame at the location it is "positioned." Arctic Cat counters that Polaris disclaimed this position because the claim initially

required the "middle portion" be "rearward of a rear end at a first height" and Polaris later removed "at a first height."

Irrespective of which party is right, the issue here is whether Polaris's construction is objectively baseless. *Precision Links Inc. v. USA Prods. Grp.*, 527 F. App'x 852, 855 (Fed. Cir. 2013). The Court finds the answer in the negative. First, the patent does not define what it means for a "sway bar" wherein "the middle portion is positioned rearward of a rear end of the frame," such that there is room for reasonable disagreement on the exact construction. Second, Figure 5 appears to support Polaris's position because it shows the middle portion of the sway bar is rearward of the rear end where it is positioned.

Finally, Arctic Cat's argument – that Polaris disclaimed its current position – is based on Arctic Cat's selective and misleading quotes of Polaris's initial claim. The initial claim was about the "rear portion" of the sway bar, not the "middle portion," and the initial claim used "at a first height" to relate the sway bar to other components ("rear drive unit"), not the frame. As such, the Court cannot hold that Polaris's interpretation is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. *See Pictometry Int'l Corp. v. Geospan Corp.*, 2014 WL 1608263, at *9-11 (D. Minn. Apr. 21, 2014) (dismissing defendants' sham litigation counterclaim because the claim language was not explicit, specification did not define the term, and plaintiff offered a reasonable argument).

Thus, as the Court finds *POSCO* and *California Motor* inapplicable to this case because of the three relevant actions, and because Polaris's patent position in Case 4 is

not "objectively baseless" under *PREI*, the Court will grant Polaris's motion to dismiss Arctic Cat's sham litigation claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Polaris's Motion to Dismiss Arctic Cat's Antitrust Counterclaim of Sham Litigation [Docket No. 30] is **GRANTED**.

DATED: March 29, 2017  
at Minneapolis, Minnesota.

                                                      s/ *John R. Tunheim*  
                                                      JOHN R. TUNHEIM  
                                                    United States District Judge