UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

POLARIS INDUSTRIES, INC.,
a Delaware Corporation

       Plaintiff,

  v.

ARCTIC CAT INC.,
a Minnesota Corporation, and
ARCTIC CAT SALES INC.
a Minnesota Corporation,

       Defendants.

Civil No. 15-cv-04475 (JRT/TNL)

**ARCTIC CAT'S OPPOSITION TO POLARIS'S ESTOPPEL MOTION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.    RELEVANT LEGAL STANARDS ...................................................................... 2

III.    BACKGROUND ................................................................................................... 2

IV.    ARCTIC CAT IS NOT ESTOPPED FROM ASSERTING INVALIDITY BASED ON PHYSICAL VEHICLES ............................................ 5

    A.    IPR Estoppel Extends Only To Prior Art That Was Or Could Have Been Brought During IPR, Which Does Not Include Physical Vehicles. ................................................................................... 6

    B.    Arctic Cat's Prior Art Vehicles Are Also Superior And Separate References To The Related Printed Publications. ...................................... 11

V.    CONCLUSION ................................................................................................... 16

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.    RELEVANT LEGAL STANARDS ...................................................................... 2

III.    BACKGROUND ................................................................................................... 2

IV.    ARCTIC CAT IS NOT ESTOPPED FROM ASSERTING INVALIDITY BASED ON PHYSICAL VEHICLES ............................................ 5

    A.    IPR Estoppel Extends Only To Prior Art That Was Or Could Have Been Brought During IPR, Which Does Not Include Physical Vehicles. ................................................................................... 6

    B.    Arctic Cat's Prior Art Vehicles Are Also Superior And Separate References To The Related Printed Publications. ...................................... 11

V.    CONCLUSION ................................................................................................... 16

## **TABLE OF AUTHORITIES**

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. Jonathan Woodner Co.*,
   475 A.2d 393 (D.C. 1984) ............................................................................................. 6

*Clearlamp, LLC v. LKQ Corp.*,
   No. 12 C 2533, 2016 U.S. Dist. LEXIS 195516 (N.D. Ill. July 1, 2016) .................... 10

*Depomed, Inc. v. Purdue Pharma L.P*,
   No. CV 13-571 (MLC), 2016 WL 8677317 (D.N.J. Nov. 4, 2016) ........................ 9, 12

*Ilife Techs., Inc. v. Nintendo of Am., Inc.*,
   No. 3:13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769 (N.D. Tex. May 30, 2017) ........................................................................................................................... 8

*Intellectual Ventures II LLC v. Kemper Corp.*
   2016 WL 7634422 (E.D. Tex. Nov. 7, 2016) ................................................................ 9

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
   271 F. Supp. 3d 990 (E.D. Wis. 2017).................................................................. 10, 11

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
   15-cv-1067, 2019 U.S. Dist. LEXIS 28279 (N.D. Ill. Feb. 22, 2019) ......................... 11

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
   330 F. Supp. 3d 574 (D. Mass. 2018) .................................................................... 2, 10

*Star Envirotech, Inc. v. Redline Detection, LLC*,
   No. SACV1201861JGBDFMX, 2015 WL 4744394 (C.D. Cal. Jan. 29, 2015) ................................................................................................................... 12, 15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   814 F.3d 1309 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) ................................................... 6

*United States v. Jungers*,
   702 F.3d 1066 (8th Cir. 2013) ...................................................................................... 7

*Verinata Health Inc. v. Ariosa Diagnostics., Inc.*
   No. 12-cv-005501-SI, 2017 U.S. Dist. LEXIS 7728 (N.D. Cal. Jan. 19, 2017) ........................................................................................................................... 8

*Zitovault, LLC v. Int'l Bus. Machines Corp.*,
   No. 3:16-CV-0962-M, 2018 WL 2971178 (N.D. Tex. Apr. 4, 2018) ....................... 7, 8

**Statutes**

35 U.S.C. § 315(e)(2) ........................................................................................ 6, 7, 9, 10

I.     **INTRODUCTION**

Polaris's motion seeks extreme relief that is unsupported by the plain language of the estoppel statute or the cases interpreting that statute. The IPR process is not an "alternative to district court litigation" or something that "force[s] a party to choose a venue for its invalidity challenge." (Polaris Br. at 3-4.) Rather, the IPR process provides one limited way to challenge a patent's validity, based on patents and other printed materials. The language of the estoppel statute is commensurate with the narrow scope of IPR proceedings and is limited to estoppel of the printed materials that could have been used in an IPR. As the vast majority of cases addressing this issue have held, the estoppel statute simply does not apply to arguments based on prior art products, such as the prior art vehicles that Arctic Cat is relying on in this case. The Court should deny Polaris's motion on this basis alone.

The argument against estoppel is even stronger here because the physical prior art vehicles disclose features that are not present in the printed publications that were raised in the IPR. While a handful of courts have held that estoppel may apply in limited circumstances where a printed publication disclosing all relevant aspects of the physical prior art could have been presented in the IPR, even under the minority view, estoppel does not apply if the physical prior art is a "superior and separate" reference. Here, the parties' experts spent a collective *six days* inspecting the prior art vehicles because the vehicles themselves disclose features, critical to the invalidity issues in this case, that can't be gleaned from printed publications. Polaris's expert even conceded during his deposition that the vehicles were superior to the manuals: "many times the images in the

manuals aren't clear. Sometimes certain items are not in the images, and you kind of don't know that." (Ex. A,[1] Bower Depo. at 152:9-24.) Simply put, the physical vehicles in this case permit the type of analysis and inspection that cannot be performed on a piece of paper.

At bottom, Polaris's motion is a thinly veiled and legally unsupported attempt to keep from the jury critical evidence showing that companies, long before Polaris, came up with the very thing that Polaris claims to have invented. Depriving Arctic Cat of the ability to use this evidence at trial would be to deprive Arctic Cat of ***any forum*** in which to present it. The plain language of the estoppel statute does not support this, and the Court should deny Polaris's motion.

## II.   RELEVANT LEGAL STANARDS

The burden of showing IPR estoppel rests on the moving party. *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602–03 (D. Mass. 2018). Where legal standards are otherwise relevant to Polaris's motion, Arctic Cat discusses them in the context of its argument below.

## III.   BACKGROUND

Arctic Cat's expert, Dr. Gregory Davis, demonstrated in his report that three different combinations involving physical prior art vehicles render the claims of the '501 patent obvious. (Ex. B, Davis Report ¶¶ 341-468, 469-575, 815-907.) Polaris's briefing

---

[1] All cited exhibits are attached to the Declaration of Joseph Herriges, filed with this brief.

2

refers to these as Combinations 1, 2, and 5, and they are as follows (with the physical vehicles bolded):

- Combination 1: **Polaris RZR 800 S**, **Pontiac Fiero**, and **Polaris Ranger**
- Combination 2: **Kymco UXV 500** and **Pontiac Fiero**
- Combination 5: Leonard patent and **Pontiac Fiero**

The RZR 900, Ranger, and Kymco vehicles are side-by-side off-road vehicles of the type claimed by the '501 patent that Polaris asserts in this case. (*See generally id*.) While these first three vehicles do not have an air inlet in the side panel, the Pontiac Fiero does:



(Ex. B, Davis Report ¶134.)  In his report, Dr. Davis explained in detail how it would have been obvious to implement a side-air intake, as suggested by the Pontiac Fiero, in the designs of the RZR 800 S, Ranger, Kymco, and Leonard vehicles. (*Id*. ¶¶ 341-468, 469-575, 815-907.)  The reason, based on Dr. Davis's inspection and analysis of the various vehicles, is that side air inlets provide performance and drivability advantages. For example, side inlet designs like the Fiero's create less noise than other locations and

3

are less likely than other locations to be obstructed.  (*See* Ex. B, Davis Report, ¶¶346-362; *id*. ¶¶ 341-468, 469-575, 815-907).

To form his opinions, Dr. Davis inspected the physical vehicles over the course of four days in Thief River Falls.  That physical inspection included the following:

- Test-driving the vehicles on varying terrain;
- Determining the center of gravity of the vehicles;
- Disassembling the vehicles;
- Performing physical measurements of the vehicles, including measuring the length, wheelbase, and height of the vehicles;
- Performing physical measurements of the vehicles' intake systems to assess resonance and vibration, maintainability, and suction requirements;
- Evaluating engine and transmission sound levels and sound quality.

(*See id*. ¶¶131-36, 138-140, 144-46, 407, 444-46, 556-59.)  None of these measurements or tests could have been performed on a printed publication.

Polaris's expert, Dr. Glenn Bower, also relied on extensive inspection of the physical vehicles for his rebuttal opinions.  Dr. Bower's inspection of the physical vehicles took place over the course of two days in Thief River Falls, and included at least the following tests that he documented in his report:

- Test-driving the vehicles;
- Performing sound-level testing, using an Extech Instruments sound meter, at idle and near maximum throttle, (*e.g.*, Bower Report ¶¶88-91);
- Performing qualitative sound-level testing for "objectionable noise," (*e.g.*, Bower Report ¶355);
- Disassembling the vehicles;

4

- Performing physical measurements on the vehicles' ground clearance, (*e.g.*, Bower Report ¶337);

- Performing physical measurements on the vehicles' intake systems, (*e.g.* Bower Report ¶161);

- Assessing intake blockage to analyze adequacy of air flow, (*e.g.*, Bower Report ¶¶347, 515-16).

Like the tests that Dr. Davis performed, none of Dr. Bower's measurements or tests could have been performed on a printed publication. In fact, Dr. Bower conceded that the printed publications did not disclose all relevant features and did not allow for the measurements needed to assess invalidity in this case:

> Q. Did the manuals themselves give you enough information to form your opinion, or did you need to conduct additional inspections and testing to form your opinion?
>
> A. Well, I think a lot of the reasons for going up is, is that the—many times the images in the manuals aren't that clear. ***Sometimes certain items are not in the images, and you kind of don't know that***. And so, I mean, the first reason we went up is just to be able to take pictures and inspect the vehicles. And it's actually a lot, say, faster to inspect a vehicle than it is to try to go through the 3 or 400 pages of the parts manual or the service manual. ***The other thing we would get is measurements that we can't get off the service manuals***.

(Ex. A, Bower Tr. 152:9-24 (objection omitted, emphasis added)).

**IV. ARCTIC CAT IS NOT ESTOPPED FROM ASSERTING INVALIDITY BASED ON PHYSICAL VEHICLES[2]**

The district court is the only forum in which Arctic Cat is allowed to present its invalidity challenges based on physical prior art vehicles. Indeed, Arctic Cat would have

---

[2] Arctic Cat does not dispute that it would be estopped at trial from asserting obviousness grounds based solely on printed publications (Combinations 3-4, and 6-7, as designated

5

been statutorily barred from using such prior art in the IPR. Recognizing this important distinction between the forums, the Federal Circuit has made clear that IPR is not a substitute for district court litigation:

> *Inter partes* review cannot replace the district court in all instances, for example, when claims are challenged in district court as invalid based on the on-sale bar, for claiming patent-ineligible subject matter, or on grounds of indefiniteness.

*Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016), *overruled on other grounds by Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017). The physical vehicles at issue here could not have been presented in the IPR, and they present critical features that are not present in printed publications. Under these facts, Arctic Cat is aware of no authority estopping the use of physical prior art. The Court should allow Arctic Cat to present its invalidity arguments based on physical prior art, and deny Polaris's motion.

### A. IPR Estoppel Extends Only To Prior Art That Was Or Could Have Been Brought During IPR, Which Does Not Include Physical Vehicles.

The Court's analysis need go no further than the plain, unambiguous language of the statute: only grounds that could have been raised in IPR are subject to estoppel.

---

in Polaris's brief). However, Arctic Cat has filed its Opening Brief at the Federal Circuit challenging the PTAB's Final Written Decision on the '501 Patent. If the Federal Circuit vacates the Final Written Decision, estoppel would no longer apply. *See Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 396–397 (D.C. 1984) ("Reversal of a decision renders it invalid, and application of collateral estoppel clearly should not be based upon an invalid decision."). Thus, Arctic Cat cannot agree to Polaris's proposal that estoppel be entered now regarding the printed publications. Further, the estoppel statute only precludes use of printed publications as a ground for invalidating a patent claim. It does not preclude use of such printed publications for other purposes, such as authenticity, cross-examination, or background to show the state of the art. *See* 35 U.S.C. § 315(e)(2).

6

Because Arctic Cat could not have asserted physical vehicles as an invalidity ground in the IPR, those physical vehicles are not subject to the estoppel statute, and Polaris's motion should be denied.

The estoppel provision reaches only those pieces of prior art that: (1) were actually raised during IPR, or (2) reasonably could have been brought before the Board during IPR. *See* 35 U.S.C. § 315(e)(2) ("The petitioner in an inter partes review . . . may not assert . . . that the claim is invalid on any ground that the petitioner ***raised or reasonably could have raised during that inter partes review***.") (emphasis added). It is undisputed that Arctic Cat did not actually raise any ground of invalidity in the IPR based on the physical Kymco, Ranger, RZR, and Fiero vehicles. (*See* Polaris Br. at 10 (setting forth IPR grounds).) It is also undisputed that Arctic Cat ***could not have raised*** grounds based on these actual vehicles during IPR. (*See* Polaris Br. at 4 (noting IPR may be brought "only on prior art consisting of patents or printed publications").) Given that Arctic Cat's prior art vehicles do not fall into either category, there is no statutory basis for estopping Arctic Cat from using those vehicles here in district court. The Court should apply the statute's plain language to deny Polaris's motion. *United States v. Jungers*, 702 F.3d 1066, 1069 (8th Cir. 2013) (where the statutory language is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

Numerous courts have already considered Polaris's argument to expand the plain language of the statute, and rejected it. The patentee in the *Zitovault* case made the same argument that Polaris makes here, arguing that the "accused infringer cannot avoid

7

statutory estoppel simply by relying on a system where all of the teachings of the system also exist in patents or printed publications because that ground reasonably could have been raised during the IPR." *Zitovault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971178, at *4 (N.D. Tex. Apr. 4, 2018). Relying on the plain language of the statute, the court rejected this argument because defendants "could not have raised prior art systems, such as products and software, during IPR proceedings." *Id*. Another Northern District of Texas decision similarly followed the plain language of the statute, finding that physical prior art is not estopped because it could not have been raised in an IPR:

> A petitioner could not have reasonably raised a combination of a prior art *product* with a patent or printed publication as a ground for invalidity before the PTAB, as a petition to institute an IPR may be brought 'only on the basis of prior art consisting of patents or printed publications.' § 311(b). Accordingly, the Court finds that estoppel applies to all patents and printed publications that reasonably could have been raised in an IPR petition to the Board, but not to patents or printed publications that combined with prior art products would be ineligible for inter partes review under § 311(b).

*Ilife Techs., Inc. v. Nintendo of Am., Inc.*, No. 3:13-cv-4987-M, 2017 U.S. Dist. LEXIS 87769, at *20 (N.D. Tex. May 30, 2017); *cf. Verinata Health Inc. v. Ariosa Diagnostics., Inc.* No. 12-cv-005501-SI, 2017 U.S. Dist. LEXIS 7728, at *10 (N.D. Cal. Jan. 19, 2017) ("Indeed, limiting IPR estoppel to grounds actually instituted ensures that estoppel applies only to those arguments, or potential arguments, that received (or reasonably could have received) proper judicial attention."). Polaris asks this Court to ignore these holdings, but provides no persuasive reason for doing so.

8

There are also at least two additional cases that Polaris did not address, both of which held that the plain language of the estoppel statute doesn't apply to physical prior art. In the Eastern District of Texas, while addressing a stay issue, Judge Gilstrap stated that a defendant could use prior art systems in district court, even if those systems embody printed publications actually used in an IPR:

> Regardless of any estoppel, defendants have considerable latitude in using prior art systems (for example, software) embodying the same patents or printed publications placed before the PTO in IPR proceedings.

*Intellectual Ventures II LLC v. Kemper Corp.* 2016 WL 7634422, at *3 (E.D. Tex. Nov. 7, 2016).

Similarly, the District of New Jersey has found that estoppel does not apply to prior art products asserted during litigation following an IPR. *Depomed, Inc. v. Purdue Pharma L.P*, No. CV 13-571 (MLC), 2016 WL 8677317, at *8 (D.N.J. Nov. 4, 2016). In *Depomed*, just as here, the patentee argued that the defendant's on-sale bar invalidity defense should be excluded, because "it had sufficient documentation about the [] product to raise the theory" in IPR, but chose not to do so. *Id*. at *6. The *Depomed* court rejected this argument, and agreed that "the use of patents or printed publications to support [the defendant's] contentions that 'the claimed invention was on sale prior to the filing of the patents-at-issue . . .' should not transform these defenses, *i.e.*, the on sale bar and § 102(g) defenses, 'into a statutory ground for relief in an IPR.'" *Id*. at *8. As such, the Court concluded that "the estoppel provisions of 35 U.S.C. § 315(e)(2) do not apply to Purdue's on-sale bar or § 102(g) defenses." *Id*.

9

The few cases that Polaris does cite are readily distinguishable from this case. In the *Clearlamp* case (which predates almost all of the authority Arctic Cat cites above), the defendant was not trying to rely on a physical product in district court, like Arctic Cat is doing here, but was seeking to rely on a datasheet—which could have been used in an IPR—related to a physical product. *See Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 U.S. Dist. LEXIS 195516 (N.D. Ill. July 1, 2016). This case is much different. Here, unlike in *Clearlamp*, Arctic Cat relies on the actual physical vehicles as prior art, not on the printed publications describing those vehicles.[3]

The *SiOnyx* case, also cited by Polaris, dealt with a similar issue. Again, the patentee argued the accused infringer was effectively relying on documents, rather than a product itself to make its invalidity case. *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 603–04 (D. Mass. 2018). The *SiOnyx* court disagreed, and more importantly, also held that estoppel did not extend to the "actual product" even if it could arguably extend to some of the documents describing that product. *Id*.

The *Milwaukee Electric Tool* case cited by Polaris also supports Arctic Cat. In that case, the accused infringer sought to rely on "physical specimens of Moli battery cells and packs, as well as battery cells and packs from other manufacturers." *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017). The

---

[3] To the extent Arctic Cat continues to rely on the printed publications, it is not for purposes of proving invalidity; rather, it would be to establish the authenticity and admissibility of the vehicles themselves, or to provide the background knowledge of skilled artisans. *See* 35 U.S.C. § 315(e)(2) (petitioner is estopped from asserting only "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised").

10

court reasoned that written materials describing such devices would fall within estoppel, but stated that "[t]he Court is not convinced that the principle of excluding non-petitioned grounds should be extended [to the physical products], given the clear limitation of Section 311(b) to written materials." *Id*.

The final case Polaris cites, *Oil-Dri*, is yet another case where the court **declined** to find estoppel. *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, 15-cv-1067, 2019 U.S. Dist. LEXIS 28279, at *31 (N.D. Ill. Feb. 22, 2019) (finding no estoppel because the underlying printed publications had not been shown to be publicly available). Further, the *Oil-Dri* court's statement, in dicta, that a party may "not avoid estoppel simply by pointing to its finished product" stands in sharp contrast to the majority of district court decisions on this issue, and is inconsistent with the plain language of the statute. The Court should decline to follow it.

In sum, because the physical vehicles Arctic Cat seeks to use in this litigation could not have been raised in the IPR, they are not subject to the estoppel statute. The Court should thus deny Polaris's motion with respect to invalidity grounds that rely on physical prior art vehicles.

> **B.    Arctic Cat's Prior Art Vehicles Are Also Superior And Separate References To The Related Printed Publications.**

The facts of this case are even further removed from the cases Polaris cites because Arctic Cat's physical vehicles provide numerous details and unique features that are not present in the printed publications. These differences further support denying Polaris's motion.

11

While most courts have looked to the plain language of the statute, a few courts have looked to whether a prior art product is a "superior and separate" reference to the corresponding printed publication. *See, e.g.*, *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV1201861JGBDFMX, 2015 WL 4744394, at *4 (C.D. Cal. Jan. 29, 2015); *see also Depomed*, 2016 WL 8677317, at *8. Even under the "superior and separate" line of cases, Arctic Cat's physical vehicles offer unique attributes not present in the printed publications themselves.

Polaris significantly overstates its case by claiming that it is "undisputed" that all the relevant features of the physical vehicles are shown in the literature. That is simply not true. The physical vehicles have critical features that none of the printed publications contain: the ability to perform tests and measurements on those vehicles, which are directly relevant to the invalidity issues in this case. The parties' experts spent a total of six days inspecting the prior art vehicles and performing numerous, detailed tests to support their opinions. As a part of these inspections, both experts drove the vehicles and evaluated their performance extensively. Then, both experts relied on these tests to support their opinions, particularly as to whether a person of skill would have been motivated to combine the prior art vehicles and references.

For example, Arctic Cat contends that a person of skill would have been motivated to modify the air intake positioning of the RZR 800 and Kymco vehicles in order to avoid issues regarding blockage of the existing air intake duct (located between the passengers). (*See* Section III, *supra*.) In forming his opinions, Dr. Davis inspected the RZR 800 vehicle and evaluated the extent to which clothing or other items could create a blockage

problem. (Ex. B, Davis Report ¶ 358.) Dr. Davis performed a similar inspection and test of the Kymco vehicle. (*Id.* at ¶ 473.) Likewise, Dr. Bower relied on his personal inspection and evaluation of the RZR 800 vehicle in countering Dr. Davis's opinions regarding blockage. (Ex. C, Bower Rep. ¶ 346.)

As another example, Arctic Cat contends that a skilled artisan would have been motivated to modify the air intake positioning of the RZR 800 to address noise issues. (*See* Section III, *supra*.) In response, Dr. Bower relied on decibel-level testing that he performed on the prior art vehicles in operation. (*Id.* ¶¶ 87-90.) It would not be possible to perform similar testing on a printed publication. The parties' expert reports are replete with instances where the experts relied on specific details of the physical vehicles made apparent during in-person inspections to form their opinions. (*See* Ex. B, Davis Report ¶¶ 134, 818 (measuring the specific duct length on the Pontiac Fiero in order to offer opinions regarding Combination 5); ¶ 358 (measuring specific length of ducting required to modify RZR 800 in claimed manner); ¶ 407 (noting difficulty in removing CVT housing from personal inspection as a motivation to relocate the CVT cover position in the RZR vehicle); Ex. C, Bower Rep. ¶ 361 (relying on specific measurements of physical vehicle in forming opinions about impact of sound on vehicle occupants); ¶ 449 (relying on inspection of Kymco vehicle and specific measurements in forming opinions about the changes required to extend the air inlet to the side of the vehicle).) While the literature shows some technical features of the vehicles, it does not provide this kind of information, which both experts found necessary to form their invalidity opinions.

Moreover, inability to perform such testing on the printed publications associated with these vehicles was one of the reasons that the Board ultimately found against Arctic Cat in the IPR. For example, in the Board's decision, the Board noted how Arctic Cat "does not provide any reports or other evidence indicating Sunsdahl or the 2009 Ranger RZR had an intake blockage/restriction problem."[4] (Ex. E, -433 IPR FWD at 16; *see also id*. at 18 ("We do not agree, however, that this disclosure adequately suggests that Sunsdahl's CVT intake is susceptible to blockage.").) This alone illustrates that the vehicles are "superior" references to the related printed publications and provide unique details not present in the printed publications.

Polaris's argument that the manuals contain the same details as the vehicles themselves is also directly contradicted by its own expert, Dr. Bower, who testified that "***many times the images in the manuals aren't clear***" and that the manuals did not allow for measurements necessary for his opinion. (Ex. A, Bower Depo. at 152:9-24 (objections omitted; emphasis added).) Dr. Bower made similar statements when deposed in connection with the IPR, suggesting that "validation" of a physical system would be necessary to draw certain conclusions. (Ex. F, Bower IPR Depo. at 47:15-25 ("Okay. So what I was asking, though - - you said, when you reviewed the Sunsdahl reference, the system will operate. Right? That's your belief. . . . A. Without doing any validation on a physical system, from what is disclosed in Sunsdahl, I have to reason to believe . . . there would be any issues with their system operating."). Again, these

---

[4] The Board denied Arctic Cat's request to submit such evidence. (*See* Ex. D.)

statements demonstrate that the physical vehicles and product manuals are not coextensive for purposes of the invalidity analysis, and the vehicles provide unique details not available in the printed publications.

The fact that Arctic Cat and its expert used printed publications to support authenticity of the physical vehicles is irrelevant to estoppel. First, the estoppel statute does not preclude using printed publications for authenticity or background purposes; it only precludes using them as an invalidity ground. Further, as explained in Arctic Cat's summary judgment briefing on the Kymco authentication issue, its expert relied on the manuals in forming his conclusion that the vehicles had not been altered in a material way. (*See* Dkt. No. 360.) While the manuals are sufficient for that purpose, the vehicles still provide additional, unique features, such as the ability to test the vehicle noise and operation, which is impossible with printed publications.

Polaris's motion also contains misplaced reliance on Arctic Cat's invalidity contentions. Invalidity contentions are an early case pleading that serve a notice function—putting the patentee on notice of the prior art and its alleged teachings. By now, however, the parties have had the benefit of discovery and can expand on notice pleadings with many additional details. Thus, while the printed publications cited in Artic Cat's contentions were sufficient to put Polaris on notice of Arctic Cat's general theories, the details of Arctic Cat's validity position have since been expanded, based in part on detailed inspections and testing of the prior art vehicles.

Thus, even under the "superior and separate" test articulated by the *Star Envirotech* court, there is no basis to find Arctic Cat's invalidity grounds based on prior art vehicles are estopped.

## V. CONCLUSION

Arctic Cat respectfully requests that the Court deny Polaris's motion with respect to any grounds in which Arctic Cat is asserting physical prior art as an obviousness reference.

Dated:  March 29, 2019

FISH & RICHARDSON P.C.

By: */s/ Joseph A. Herriges*
John C. Adkisson (#266358)
Joseph A. Herriges (#390350)
Jason Zucchi (#0387908)
Conrad A. Gosen (#0395381)
Maria Elena Stiteler (#0398551)
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696
adkisson@fr.com; herriges@fr.com;
zucchi@fr.com; gosen@fr.com;
stiteler@fr.com

Attorneys for ARCTIC CAT INC. and
ARCTIC CAT SALES INC.